# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

RAUL RODRIGUEZ,

                          Plaintiff,

        vs.                                      9:13-CV-574
                                                   (GLS/ATB)

ERIC T. SCHNEIDERMAN, *et ano.*,

                          Defendants.

---

RAUL RODIGUEZ, Plaintiff pro se
BRUCE J. BOIVIN, AAG, Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Gary L. Sharpe, Chief United States District Judge.

In this civil rights complaint, plaintiff alleges that he was denied due process in conjunction with his involuntary commitment to the Central New York Psychiatric Center ("CNYPC") as a sex offender requiring civil management, pursuant to Article 10 of the N.Y. Mental Hygiene Law ("MHL"). (Compl.) (Dkt. No. 1). Plaintiff seeks a substantial amount of money damages. (Compl. at CM/ECF pp. 8, 10).[1]

Presently before the court is the defendants' motion to dismiss for failure to state

---

[1] The court notes that the complaint is written in two distinctly different handwriting styles. (*Compare* Compl. at 1-4, 9-10 *with* Compl. at 5-8). On page 8, the complaint requests punitive damages of 5.5 million dollars from each defendant per year that plaintiff was in custody pursuant to the civil commitment, and 5.5 million dollars per year in compensatory damages from each defendant. However, on page 10, in different handwriting, in the section entitled "Prayer for Relief," the complaint asks only for 5 million dollars per year in punitive and compensatory damages from each defendant.

a claim and for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). (Dkt. No. 21). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

## I.    <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents

incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier-Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

## II.    **Background of Relevant Caselaw**

In order to better understand the plaintiff's claims, it is necessary to discuss the background of the specific cases he relies upon for his due process challenge. Effective on April 13, 2007, the New York Sex Offender Management and Treatment Act ("SOMTA"), codified in Article 10 of the MHL, authorizes the "civil management" of certain sex offenders after completion of their prison terms, parole terms, or other periods of state custody. *Mental Hygiene Legal Service v. Cuomo ("MHLS-II")*, 785 F.

3

Supp. 2d 205, 209 (S.D.N.Y. 2011). This "civil management" is based upon the danger to society that is posed by recidivist sex offenders.[2] *Id.* "Civil management" can include placement and treatment in a secure facility, akin to incarceration as well as other "strict and intensive supervision." SOMTA provides for procedures to be followed when an individual who has been convicted of a sex offense is nearing the end of his sentence of incarceration or other state custody in order to determine whether civil commitment is necessary.

MHLS filed a "pre-enforcement" facial challenge to certain provisions of the SOMTA, only one of which is relevant to this case. *Id.* MHL Section 10.06(k) mandates involuntary civil detention, pending a commitment trial, based upon a finding at a probable cause hearing that the individual may have a mental abnormality, without a finding of current dangerousness. *Id.* In general, the MHL provides that when a convicted sex offender nears release from confinement or parole, a "multidisciplinary staff" provides a "preliminary review" to determine whether the individual should be referred for further evaluation. *MHLS-II*, 785 F. Supp. 2d at 211 (citing MHL § 10.05(d)). If the staff determines that additional evaluation is necessary, a case review team ("CRT"), consisting of three individuals, at least two of whom are mental health

_____

[2] In *Mental Health Legal Services v. Spitzer* ("*MHLS-I*"), No. 07 Civ. 2935, 2007 WL 4115936 (S.D.N.Y. Nov. 16, 2007), the court elaborated upon the purposes for SOMTA, stating that the New York Legislature found that recidivistic sex offenders pose a danger to society that should be addressed through comprehensive programs of treatment and management, and that some sex offenders have mental abnormalities that predispose them to engage in repeated sex offenses. 2007 WL 4115936 at *1 (citing MHL §§ 10.01(a), 10.01(b)). Treatment of these offenders begins during their incarceration on the criminal charges, but the legislature found that the treatment should continue when that incarceration comes to an end, and that in "extreme cases," confinement will need to be extended by civil process in order to provide treatment while protecting the public from recidivist conduct. *Id.*

4

professionals, must determine whether that person (the "respondent") requires additional civil management. *Id.* (citing MHL § 10.06(a)). The respondent is afforded notice of the referral. *Id.* (citing 10.05(e)).

The CRT determines whether the respondent suffers from a mental abnormality and is either a "dangerous sex offender requiring confinement," or "a sex offender requiring strict and intensive supervision." *Id.* at 212 (citing MHL §§ 10.03(1), 10.03(q), 10.03(e), 10.03(r)). If it appears that the individual will be released prior to the time the CRT makes its determination, the Attorney General is authorized to file a "securing petition," preventing the individual's release from custody while the review is ongoing. *Id.* (citing MHL § 10.06(f)).

If the CRT determines that the individual requires additional "civil management," the Attorney General files a "sex offender civil management petition" in New York State Court. The court must conduct a hearing to determine whether there is probable cause to believe that the individual requires civil management. *Id.* (citing §§ 10.06(a), (g), and (k)). The hearing must commence withing 72 hours of the anticipated release date unless the individual consents or the Attorney General shows good cause for the delay. MHL §§ 10.06(g), (h). Upon the court's finding of probable cause, SOMTA provides that the individual must be committed to a secure treatment facility pending resolution of a full commitment trial. MHL § 10.06(k). The statute provides that the trial must begin within 60 days of the probable cause hearing. MHL § 10.07(a).

In *MHLS-1*, the court granted a preliminary injunction, prohibiting the enforcement of MHL § 10.06(k), without an individualized finding that the individual

5

was "dangerous," and that no condition or combination of conditions of supervision could allow the respondent to be at liberty pending the final adjudication. *See* 2007 WL 4115936, at *15. The court in *MHLS-II* found that section 10.06(k) was facially unconstitutional and granted a permanent injunction, with the same conditions. The court must note that neither[3] court invalidated the section altogether as plaintiff seems to argue. Rather that prohibiting use of the section altogether, the court specifically enjoined enforcement of section 10.06(k) "***absent a specific, individualized finding of probable cause to believe that a person is sufficiently dangerous to require confinement, and that lesser conditions of supervision will not suffice to protect the public during the pendency of the proceedings.***"[4] *Id.*

The court notes that although the Second Circuit affirmed the preliminary injunction, it later reversed the court's order granting a permanent injunction and remanded the case to the district court to determine whether MHLS had standing to pursue the action on behalf of its clients, who were respondents in the MHL proceedings.[5] *MHLS v. Schneiderman*, 472 F. App'x 45 (2d Cir. 2012). On remand, the

---

[3] The judge who issued the preliminary injunction in *MHLS-I* was Judge Gerard E. Lynch. Judge Lynch was subsequently appointed to the Second Circuit Court of Appeals, and the case was assigned to Judge Deborah A. Batts, who issued the permanent injunction in *MHLS-II* in 2011.

[4] In making this determination, the court likened the analysis under the MHL to the Bail Reform Act's provision providing for pretrial detention of a criminal defendant upon a finding of probable cause to believe that the defendant has committed the crime, and that the individual poses a danger to the community that no conditions or combination of conditions of release will prevent. *See* 785 F. Supp. 2d at 225 (citing *United States v. Salerno*, 481 U.S. 739, 750 (1987)). Probable cause alone will not suffice. *Id.*

[5] The standing issue was brought about based upon the Second Circuit's decision in *Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149 (2d Cir. 2012). The issue was whether MHLS could establish any of the "indicia of membership" required for a

District Court found that MHLS did not have standing to pursue the respondents' claims and dismissed the action. *MHLS v. Cuomo* ("*MHLS-III*"), No. 07 Civ. 2935 (DAB), 2014 WL 1345891 (S.D.N.Y. Mar. 31, 2014).

## III.  Facts and Contentions

Plaintiff alleges that he was arrested on July 19, 2004 and was sentenced to serve 2-3[6] years incarceration, with a maximum release date of July 15, 2007.[7]  Plaintiff states that he was held beyond his maximum release, without a hearing, based upon MHL § 10.06(k), in violation of due process and in violation of the injunctions issued in *MHLS-I*, and *MHLS-II* (Compl. at 7).  Plaintiff takes an overly simplified view of the court's rulings and argues that the AG violated the injunctions as well as the constitution by using section 10.06(k).

The plaintiff relies heavily on the decisions in the *MHLS* cases, rather than discussing facts in his own case, and he seeks only damages for the alleged violations. Defendants have submitted the court documents that were filed in plaintiff's MHL Article 10 proceeding, and they argue that the complaint should be dismissed on various bases, some unrelated to the merits of the due process claim, including the statute of limitations and absolute immunity.  Defendants also argue that plaintiff has

---

membership organization to assert associational standing. *Id.*  The dismissal based upon standing does not change the court's analysis of the merits of the claims, but the permanent injunction is no longer in effect.

[6] Plaintiff was actually sentenced to serve 1-3 years incarceration. (Boivin Decl. Ex. A at ¶ 4) (Dkt. No. 21-1).  The difference is irrelevant to this court's decision.

[7] Defendants state that plaintiff's maximum released date was July 14, 2007.  This difference is also irrelevant to the decision in this case.

failed to state a claim on the merits of this action, that he received due process, and that he is properly confined under the MHL. The following facts are taken from the defendants' exhibits, of which this court takes judicial notice.

Plaintiff was convicted in Erie County on September 24, 2004 of Attempted Sexual Abuse, First Degree in violation of New York State Penal Law, section 130.65, a Class D Felony. (Boivin Decl. Ex. A at ¶ 4 & Ex. H at 1) (Petition for Civil Management Pursuant to Article 10 of the MHL) (Dkt. No. 21-1). Based on this conviction, plaintiff qualified as a sex offender under MHL § 10.03(p). (*Id.* ¶ 5). On July 12, 2007, the day before plaintiff's scheduled release date,[8] Assistant Attorney General ("AAG") Peter B. Sullivan filed the Petition for Civil Management in Wyoming County, where plaintiff was then confined. (*Id.*) The petition contains a copy of the report and conclusions by the Case Review Team that reviewed plaintiff's case according to the requirements of the statute. (*Id.* ¶ 3 & Exs. A, B to the Petition). The team's conclusion was that plaintiff is a sex offender requiring civil management, and the report is written by Christine Rackley, Psy. D., a licensed psychologist. She concludes that plaintiff has a mental abnormality as defined by MHL § 10.03(p). (*Id.* ¶ 3).

The AAG's petition outlines the findings in Dr. Rackley's report and concludes that plaintiff suffers from a mental abnormality, presenting a danger to himself or others if he is not committed to a hospital setting. (*Id.* ¶ 13). Given the plaintiff's history, the

---

[8] According to the petition, plaintiff's maximum expiration date was July 14, 2007, and he was scheduled to be released on July 13, 2007. AAG Sullivan filed the petition on July 12, 2007.

AAG stated that plaintiff would "very likely re-offend upon his release unless he is committed for care, treatment and control to a secure treatment facility." (*Id.* ¶ 14). The AAG's affidavit noted that plaintiff was not represented by counsel at that time, and given the possibility of a request for change of venue, it was not practicable to schedule a probable cause hearing within the required 72-hours as required by MHL § 10.06(h)(i). (*Id.* ¶ 15).

Based upon his affidavit and the attached reports, the AAG asked for an order finding probable cause to believe that plaintiff was a sex offender requiring civil management under the MHL, an order directing a specific attorney from Mental Health Legal Services ("MHLS") to interview plaintiff regarding possible representation, and an order producing the plaintiff "at the date, time, and place specified for a probable cause hearing by the Court pursuant to [MHL] § 10(g)." (*Id.* ¶¶ 2-3).[9] The AAG also requested that the court order the then-Department of Correctional Services[10] to retain plaintiff past his scheduled release date until the probable cause hearing was held. (*Id.* ¶ 4). Finally, the AAG requested an order suspending the scheduling of a probable cause hearing within 72-hours, and providing that the hearing shall be scheduled by "mutual agreement by Court and counsel for both sides." (*Id.* ¶ 5).

The Honorable Mark H. Dadd, J.S.C. signed the requested order to show cause the same day. (Def.s' Ex. B) (Dkt. No. 21-1 at 20-21). The court granted each of the

---

[9] These numbers refer to the numbered paragraphs in the "Wherefore" clause of the petition. (Dkt. No. 21-1 at pp.6-7).

[10] The Department of Correctional Services is now known as the Department of Corrections and Community Supervision ("DOCCS").

above requests in the AAG's petition. Justice Dadd set the return date for the order to show cause for July 23, 2007 "by telephone," and ordered that plaintiff should either be produced in person, or made available by telephone. (*Id.* at 21). The court authorized plaintiff's detention past his release date, pending the probable cause hearing and ordered an attorney from MHLS to interview the plaintiff to determine the need for court-appointed counsel. Finally, the court specifically held that the AAG had shown "good cause" why the probable cause hearing could not commence within 72-hours from the date of plaintiff's anticipated release date. (*Id.* at 21).

Although the petition was filed in Wyoming County because the MHL provides that the Article 10 petition must be filed where the inmate is located,[11] the MHL also provides that an individual may remove the case to the county in which he was convicted. MHL § 10.06(b). On July 18, 2007, plaintiff filed a "Notice of Removal Pursuant to Section 10.06(b) of the [MLH]." (Def.s' Ex. C). The notice indicated that plaintiff was requesting removal to Erie County, the county of conviction.

On September 12, 2007, Justice Dadd issued an order, after holding a telephone conference on July 23, 2007 (the return date of the order to show cause), with AAG Sullivan and MHLS counsel for plaintiff, who had interviewed plaintiff at Attica on July 16, 2007. (Def.s' Ex. D) (Dkt. No. 21-1 at 27-28). The order appointed MHLS to represent plaintiff, ordered the removal of the petition to Erie County, ordered that plaintiff remain in custody pending the probable cause hearing, and specifically ordered that "the scheduling of the probable cause hearing will be handled by the court in Erie

---

[11] At the time, plaintiff was incarcerated in Attica Correctional Facility in Wyoming County.

County." (*Id.* at 28).

The probable cause hearing was held on July 7, 2008 by the Honorable John L. Michalski in Supreme Court, Erie County, at which time documentary evidence of plaintiff's sex offender status was received, together with Dr. Rackley's testimony. (Def.s' Ex. E) (Order Finding Probable Cause Has Been Established) (Dkt. No. 21-1 a 31-32). Justice Michalski found that there was probable cause to believe that plaintiff was a sex offender requiring civil management and specifically found that plaintiff was "sufficiently dangerous to require pre-trial detention and no less restrictive alternative to OMH confinement will adequately protect the public pending the trial of this matter."[12] (*Id.* at 32).

Justice Michalski ordered plaintiff committed to a secure treatment facility, set the matter down for a "report back" on September 16, 2008, and ordered that plaintiff was not to be released pending that date or pending the completion of a trial on the matter. *Id.* On January 7, 2009, Justice Michalski issued another order, stating that plaintiff "understands that he has a right to trial under [MHL] § 10.07, but that he "knowingly, in consultation with counsel, waived those rights. . . ." (Def.s' Ex. F) (Dkt. No. 21-1 at 34-36). Justice Michalski's order stated that, based on this waiver and consent to commitment, plaintiff was to be committed to a secure treatment facility, "as though this Court had found by clear and convincing evidence that he currently has a mental abnormality and currently is a dangerous sex offender requiring confinement in

---

[12] "OMH" refers to the Office of Mental Health. The court will refer to OMH throughout this report-recommendation.

a secure treatment facility as those terms are defined under Article 10. . . ." (*Id.* at 34-35).

The order further provided that plaintiff would get treatment pursuant to MHL § 10.09 and that he would be provided, "at least annually," from January 6, 2009, with written notice of his right to petition the court for discharge pursuant to MHL § 10.09. (*Id.* at 35). Plaintiff also retained "any and all other rights" provided by MHL Article 10, including the right to petition the court in the future for discharge or release under "strict and intensive supervision and treatment." (*Id.*)

On November 2, 2009, plaintiff was sent his annual notice of the right to petition the court for discharge.[13] (Def.s' Ex. G) (Dkt. No. 21-1 at 38). Acting Supreme Court Justice Joseph Fahey (Oneida County) appointed MHLS counsel for plaintiff. Counsel advised plaintiff of his right to a hearing before a judge pursuant to MHL § 10.09(d). (*Id.*) Plaintiff was interviewed by two psychiatric examiners, one on behalf of OMH and an independent examiner requested by plaintiff's appointed counsel, who each provided a written evaluation to the court. The OMH examiner found that plaintiff was still a dangerous sex offender in need of confinement in a secure treatment facility. (*Id.* at 38-39).

After the psychiatric reports were filed with the court, Justice Fahey scheduled a court appearance for March 4, 2010. The plaintiff appeared in court, still represented by counsel, stated that he "wished to withdraw his request for an annual review hearing

---

[13] Exhibit G is Judge Fahey's order for continued confinement after review. This court is reciting the facts as found by Judge Fahey in his order.

. . . ." (*Id.* at 39).  In Justice Fahey's March 8, 2010 decision, he found that, based upon the materials that had been submitted in addition to plaintiff's desire to withdraw the request for a hearing, there was no substantial issue as to whether plaintiff had a mental abnormality, and that he was still a dangerous sex offender in need of secure confinement. (*Id.*)  Judge Fahey stated that his findings were based on "clear and convincing evidence," and that plaintiff "knowingly, [and] in consultation with counsel, [has] withdrawn his request for a hearing pursuant to MHL § 10.09(d) . . . , and that [plaintiff has consented to . . . continued confinement at this time." (*Id.*)  Justice Fahey's order also re-informed plaintiff of his right to petition for release in the future. (*Id.*)

On October 27, 2010, plaintiff was sent another annual notice, informing him of his right to petition for discharge. (Def.s' Ex. H) (Dkt. No. 21-1 at 42).[14]  This time, plaintiff did not waive his right to a hearing, and Judge Fahey again appointed MHLS to represent plaintiff and appointed Dr. Charles Ewing to conduct an independent evaluation of plaintiff. (*Id.* at 42).  Dr. Timothy Wisniewski, a licensed psychologist for OMH also evaluated plaintiff and issued a written report. (*Id.*)  On January 3, 2011, the Commissioner of OMH issued a determination that plaintiff was "currently" a dangerous sex offender requiring confinement under the MHL. (*Id.* at 42-43).  Dr. Ewing issued a report on February 11, 2011, finding that plaintiff was not a dangerous sex offender requiring confinement. (*Id.* at 43).

Judge Fahey conducted the annual review hearing on February 17 and March 6,

---

[14] Defendants' Exhibit H is another order by Judge Fahey, outlining all the facts.

2012.  Both Dr. Wisnewski and Dr. Ewing testified. (*Id.*)  Judge Fahey considered the testimony and the written reports of both doctors, together with "any other exhibits received into evidence." (*Id.*)  On March 6, 2012, Judge Fahey issued the order for continued confinement, finding that the Attorney General's Office proved by "clear and convincing evidence" that plaintiff continued to have a mental abnormality "involving such a strong predisposition to commit sex offenses, and such an inability to control his behavior, that he is likely to be a danger to others and commit sex offenses if not confined to a secure treatment facility." (*Id.*)  Judge Fahey issued various orders in conjunction with his order for continued confinement, including an order for plaintiff to undergo particular tests so that the results could be used at the next annual review. (*Id.*)

IV.    **Absolute Immunity/Personal Involvement**

    A.    **Legal Standards**

It is well-settled that prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the Grand Jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation

14

omitted).  The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006).  It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

Prosecutorial immunity is extended to government attorneys who initiate civil suits or administrative proceedings. *Cornejo v. Bell*, 592 F.3d 121, 127-28 (2d Cir. 2010).  An agency official who decides to institute an administrative proceeding is entitled to prosecutorial immunity because this decision is "'very much like the prosecutor's decision to initiate or move forward with a criminal prosecution.'" *Id.* at 127 (citing *Butz v. Economou*, 438 U.S. 478, 515 (1978)).  *See also Contreras v. Perimenis*, No. 13-3337, slip op. at 3 (2d Cir. April 14, 2014) (AAG afforded absolute immunity when sued in his capacity as a government advocate, prosecuting child welfare cases).

Even if the defendants did not have absolute immunity, in order to recover damages in a civil rights action, plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivations. *Farrell v. Burke*, 449 F.3d 470, 474 (2d Cir. 2006).  There are various ways to establish personal involvement articulated in *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (a supervisory official is said to have been personally involved if that official directly participated in the infraction; if after learning of a violation through a report or appeal, he or she failed to remedy the wrong; if he or she created a policy or custom under which

unconstitutional practices occurred or allowed such a policy or custom to continue; or if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event).

## B. Application

In this case, plaintiff is seeking only damages against two Attorney General defendants. Any suit for damages against these defendants is barred by absolute immunity because the Attorney General was initiating a proceeding against plaintiff on behalf of the government. In addition, neither of the two named defendants were involved in the alleged violation of which plaintiff complains. Eric Schneiderman is the current Attorney General who was not even in office at the time in question,[15] and it does not appear that defendant Williams was involved in plaintiff's case until after the probable cause hearing which took place in Erie County. AAG Williams's name is listed on the appearances in Justice Fahey's most recent order, dated March 6, 2012. Additionally, plaintiff waived his right to his commitment trial with the advice of counsel.

In *Roache v. Attorney General's Office*, No. 9:12-CV-1034, 2013 WL 5503151,

---

[15] The court notes that for purposes of injunctive or declaratory relief, the supervisory official is an appropriate defendant because he or she is the individual with the authority to bring about any injunctive relief. Likewise, Eleventh Amendment immunity does not preclude suits for prospective declaratory and injunctive relief against state officers in their "official" capacities, while the Eleventh amendment does prohibit suits for damages against those officers in their official capacities. *Neroni v. Zayas*, No. 3:13-CV-127, 2014 WL 1311560, at *7 (N.D.N.Y. March 31, 2014) (citing *inter alia Ex Parte Young*, 209 U.S. 123 (1908)). Plaintiff in this case has confused the *MHLS* case which was a pre-enforcement action for declaratory and injunctive relief with an action for damages against an official in his or her "individual capacity."

at *13-15 (N.D.N.Y. Sept. 30, 2013),[16] Magistrate Judge Peebles recommended that the court dismiss a very similar action for damages as against the Attorney General defendants in both their official and their individual capacities, based on absolute immunity, lack of personal involvement, and Eleventh Amendment immunity. Because Magistrate Judge Peebles liberally construed plaintiff's claims in *Roache* to give rise to a due process claim, Judge Peebles recommended dismissing the action, but affording "plaintiff an opportunity to amend his complaint to name a defendant that may be properly sued for this alleged violation, ***if such an individual exists***." *Id.* at *15 (emphasis added). As will be discussed below, this court finds that to allow an amendment would be futile because this plaintiff has failed to state any claim in view of the documents associated with his commitment proceedings and because this action is likely barred by the statute of limitations.

## V.    Statute of Limitations

### A.    Legal Standards

Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250–51 (1989). *See* N.Y. Civ. Prac. L & R. § 214(5). Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action.

---

[16] District Court Judge Lawrence Kahn adopted Judge Peebles's Report-Recommendation in is entirety. 2013 WL 5503151, at *1-3.

Federal law, governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d. Cir. 1999) (citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d. Cir. 1992)). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted)). Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled. *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 1997).

## 2. Application

In this case, plaintiff challenges the application of MHL § 10.06(k), which would have applied to plaintiff after the probable cause hearing and prior to the commitment trial. Plaintiff's probable cause hearing was held on July 7, 2008, and Justice Michalski issued the order on the same day. MHLS represented plaintiff throughout the proceedings. The preliminary injunction in *MHLS-I* was issued November 16, 2007, and MHLS was the plaintiff in the action, thus, MHLS was well-aware of the issue and all the arguments involved. Thus, plaintiff's cause of action would have accrued on July 7, 2008, when the probable cause hearing was held, and MHL 10.06(k) would have applied to his case. The complaint in this action is dated May 14, 2013, and it was filed on May 17, 2013. (Compl. at 10). Even accepting the date that the complaint was signed as the operative date for the statute of limitations,[17] plaintiff is way beyond the

---

[17] It is well-settled that the "date of filing a federal complaint by a pro se prisoner is, for statute of limitations purposes, the date of delivery to prison authorities." *Walker v. Jastremski*, 430 F.3d 560, 562 n. 1 (2d Cir. 2005). *See Gibson v. City Municipality of New York*, 692 F.3d 198, 201 n. 3 (2d Cir.

three year limit.[18]

Plaintiff was represented by counsel through all the state court proceedings, and that counsel was, or should have been well-aware of the issues involved in the claims presented herein. Notwithstanding that plaintiff is now pro se, there appears to be no basis for equitable tolling, and the case may also be dismissed based upon the statute of limitations. However, as discussed further below, there are additional bases for dismissal.

## VI. <u>Due Process</u>

### A. **Legal Standards**

To begin a due process analysis, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). The parties do not question that plaintiff has a liberty interest in remaining free from involuntary commitment to a mental hospital. *See Vitek v. Jones*, 445 U.S. 480, 493 (1980). The issue is whether he was afforded the appropriate procedural safeguards in conjunction with his civil commitment.

---

2012). In this case, it is unclear when plaintiff "delivered" his papers to prison authorities for mailing, so this court will give plaintiff the benefit of the doubt and use the date that he signed the complaint.

[18] Even if the court were to find that the date of accrual were the date that plaintiff waived his right to a trial on January 7, 2009, plaintiff would still be way beyond the three year statute of limitations when he "filed" this action by signing his complaint on May 14, 2013.

## B. Application

The due process requirements regarding Article 10 commitment and treatment have been extensively discussed in the *MHLS* line of cases. The procedural protections afforded by the statute have been stated in this report above. The only problem, relevant to plaintiff's case, with the statute thus far has been found in section 10.06(k), which allowed detention of the individual after probable cause hearing, but before a full trial, without an "individualized" finding that the individual was dangerous.

A review of the documents associated with the procedures afforded to plaintiff in this case shows that the AG discussed plaintiff's dangerous nature in the first petition (the Petition for Civil Management) and requested detention "past his scheduled release date of July 13, 2007 pursuant to [MHL § 10.06(h), until the probable cause hearing has been held."[19] (*Id.* at p.7, ¶ 4). In his petition, the AG also noted that plaintiff was "returned to custody on his current sentence as a parole violator, on his admission that he had numerous contacts with a seven-year-old girl with whom he was reportedly sexually preoccupied." (*Id.* ¶ 9). The AG's petition specifically stated that given his history, the plaintiff would "likely re-offend upon his release unless he is committed for care, treatment and control to a secure treatment facility," and that "it appears that [plaintiff suffers from a mental abnormality, requires civil commitment because of such mental abnormality, and presents a danger to himself or to others if he is not committed to a hospital setting." (*Id.* ¶¶ 13-14). The court granted the AG's petition and scheduled

---

[19] The court notes that section 10.06(h) was not challenged in *MHLS-I and II*. *See MHLS-II*, 785 F. Supp. 2d at 210 (listing challenged sections).

the probable cause hearing. (Def.s' Ex. B).

It was petitioner's choice, represented by counsel, to remove the case to Erie County, and the order of court specifically stated that the scheduling of the probable cause hearing would be the Erie County Court's responsibility. (Def.s' Ex. B at 28). The court specifically continued the plaintiff's detention, pending the hearing. (*Id.*) The court granted an extension of the statutory deadlines, and any delay in the probable cause hearing was due to the removal of the case and any scheduling issues encountered after removal.

The probable cause hearing was held in Erie County. In the order finding probable cause, the court considered documentary evidence as well as psychological testimony and specifically found probable cause to believe that the plaintiff was a sex offender requiring civil management pursuant to Article 10. (Def.s' Ex. E, Dkt. No. 21-1 at 31-32). More importantly, however, the court made a specific finding that the plaintiff "is sufficiently dangerous to require pre-trial detention and no less restrictive alternative to OMH confinement will adequately protect the public pending the trial of this matter." (*Id.* Dkt. No. 21-1 at 32). Because the court made an individualized finding of dangerousness in addition to finding probable cause, neither the constitution, nor the injunction were violated in plaintiff's case.

## VII. **Opportunity to Amend**

### A. **Legal Standards**

In addition to the requirement that pro se complaints must be "liberally construed," the court should generally not dismiss without granting leave to amend at

least once. *Contreras v. Perimenis*, No. 13-3337, slip op. at 3 (citing *Cuoco v. Moritsugu*, 222 F.3 99, 112 (2d Cir. 2000)). The court may deny leave to amend when the amendment would be futile. *Id.* (citing *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999)).

## B.    Application

The court notes that Magistrate Judge Peebles recommended dismissal as against two named AG defendants, with leave to amend to add defendants who might have been "personally responsible" for the due process violation upon which Judge Peebles recommended denying the defendants' motion to dismiss. 2013 WL 5503151, at *15. He found it premature to dismiss the plaintiff's claim that he was not afforded a timely probable cause hearing according to the statute. 2013 WL 5503151, at *9, 12.

This case is quite different from the situation before Judge Peebles. Not only has the statute of limitations likely run, plaintiff has attempted to sue individuals who are absolutely immune from damage suits, has failed to name any defendant responsible for a due process violation, and has also failed to show that his due process rights have been violated based upon the documents associated with his State court commitment proceedings, including any delay in his probable cause hearing.[20] Thus, this court will

---

[20] In *Roache*, the State court judge made a finding of dangerousness after holding the probable cause hearing, thus, Judge Peebles found that there was no due process violation relating to the enforcement of section 10.06(k), and no violation of the injunction. However, Judge Peebles also construed plaintiff's complaint as raising a due process claim with respect to the delay in his probable cause hearing and the trial because they were not held within the time required by the MHL. 2013 WL 5503151, at *12. He found that it was appropriate in such a case to allow plaintiff the opportunity to amend. In this case, it is clear that the court properly extended the time for the probable cause hearing, and held that the scheduling of the probable cause hearing would be done by the court in Erie County, (Def.s' Ex. D), so there is no possible due process challenge that plaintiff could bring based upon the

recommend granting defendants' motion to dismiss and dismissing the complaint with prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion to dismiss (Dkt. No. 21) be **GRANTED**, and the complaint dismissed in its entirety **WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 16, 2014

Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

law. This is not inconsistent with *Roache*, because in *Roache*, Judge Peebles found that the removal order signed by the state court judge did not contain supporting evidence that the plaintiff consented to the waiver of the statutory time limits for the probable cause hearing and trial in the transferee court, nor did the statute provide authority for the automatic waiver of the statutory time frames upon a motion for removal. *Id.* at 9-10. In fact, the state court judge's order in *Roache*, provided that the "pending probable cause hearing be rescheduled in [the transferee] County 'within a time frame which as closely as possible adheres to the provisions of [MHL] Article 10.'" *Id.* at *4. In this case, after the probable cause hearing, the court specifically ordered that the plaintiff "shall not be released during the completion of said trial," after finding that he was dangerous and that no less restrictive alternative to confinement would adequately protect the public pending the trial." (Def.s' Ex. E).